924 P.2d 21 (1996)
130 Wash.2d 418
In re the DEPENDENCY OF J.C., J.C., J.C., and J.C.
K.C., Respondent,
v.
The DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Petitioner.
No. 63475-1.
Supreme Court of Washington, En Banc.
Argued June 13, 1996.
Decided October 10, 1996.
*22 Christine Gregoire, Attorney General, Kimberly A. Loranz, Assistant, Yakima, for petitioner.
Robert J. Reynolds, Attorney at Law, Yakima, for respondent.
Department of Assigned Counsel, Leonard D. Smith, Yakima, for other interested parties.
ALEXANDER, Justice.
The Department of Social and Health Services of the State of Washington (DSHS) seeks to overturn a decision of the Court of Appeals in which that court reversed orders of the Yakima County Juvenile Court terminating K.C.'s parental rights to her four children. The Court of Appeals determined that the orders terminating K.C.'s parental rights were not supported by the juvenile court's findings of fact. Specifically, the Court of Appeals reached this conclusion because there was no finding by the juvenile court that, at the time of the termination hearing, K.C. was continuing to use controlled substances so as to render her incapable of caring for the children. For the reasons discussed below, we conclude that the Court of Appeals's determination was incorrect and, therefore, reverse the Court of Appeals and reinstate the juvenile court's order.
K.C., who was 26 years of age when these proceedings began, is the mother of four children.[1] The oldest child, a boy, was then 9. The other three children are girls, then aged 8, 5, and 4. In November 1991, DSHS *23 removed all four children from K.C.'s care and custody and placed them in foster homes. Shortly thereafter, DSHS filed petitions in Yakima County Juvenile Court, seeking an order of dependency as to each child.[2]
Following a hearing, the juvenile court found that the facts alleged in the dependency petitions were established by a preponderance of the evidence.[3] Consequently, it concluded that the children were "dependent," as provided in RCW 13.34.030, in that they had been "abused or neglected as defined in Chapter 26.44 RCW," and it entered an order of dependency relating to each child. Exs. 5, 7, 9, 11 at 2.[4] DSHS staff then developed a "service plan," designed to help K.C. address her parental deficiencies.[5] The plan specified that K.C. participate in a variety of substance abuse treatment programs, and avail herself of certain family counseling, anger management, and mental health services.
Approximately 18 months after the service plan was initially developed, DSHS filed petitions in Yakima County Juvenile Court seeking termination of K.C.'s parental rights to the four children. It contended that K.C. had made little or no progress toward resolving her parental deficiencies and that her participation in the service plan had been poor.
K.C. testified at the termination hearing, and admitted to having abused alcohol and drugs in the past.[6] She stated, however, that she did not have an alcohol or drug problem "anymore" because she was "taking care of the problems." Report of Proceedings (RP) at 13. She conceded, however, that her current boyfriend, Manuel V., is undergoing anger management training and receiving treatment for substance abuse as conditions of his probation for assaulting K.C. K.C. also admitted that while she was enrolled in an anger management course, she struck her seven-year-old nephew, and, as a consequence, was convicted of assault in the fourth degree. Lastly, K.C. said that her supervised visits with her children were "happy" times for her and the children. RP at 14.
K.C.'s assessment of her visits with her children was contradicted by the testimony of the DSHS caseworker who had been assigned to supervise K.C. The caseworker reported *24 that during those visits K.C. would threaten the children that "if they didn't behave, she was going to go out and get drunk or go out and get high." RP at 79. The caseworker opined that such comments "contributed to the children being very upset after visits." RP 79. She also testified that although K.C. had completed in-patient drug and alcohol treatment shortly after the children had been found to be dependent, K.C. had not followed through on any of the programs designed to help her maintain sobriety. She also recounted K.C.'s sporadic attendance at parental skills classes and family counseling sessions that were part of the service plan.
The caseworker indicated, additionally, that K.C.'s "home environment," including her personal relationships with men, continued to be an impediment to her "remaining clean and sober," as well as her ability to provide a safe and stable home for the children. RP at 71. The caseworker said that at the time the children were removed from K.C.'s care, K.C.'s boyfriend, Gilbert C., as well as her current boyfriend, Manuel V., had been physically abusive to K.C. The caseworker explained further that, against the advice and direction of DSHS caseworkers, K.C. included Gilbert C. in at least two of the family counseling sessions that were called for in the service plan. Finally, the caseworker said that K.C. persists in telling her children that Gilbert C. is the father of her youngest child, despite having been told by DSHS that "blood tests taken by the county prosecutor have excluded him as the father." RP at 33; See Exs. 1, 2.
The juvenile court granted the relief sought by DSHS, concluding that all of the allegations required by RCW 13.34.180 had been shown by clear, cogent, and convincing evidence, and that termination of the parent-child relationships would be in the best interests of the children.[7] Clerk's Papers (CP) at 7. In her oral ruling, the juvenile court judge said that K.C. had "not changed one iota since this case [began]" and that an incident where she "physically abuse[d] a child while being involved in anger management... convince[d] [the court] that [K.C. has] no, absolutely no capability of providing basic parenting." RP at 91. Among its written findings of fact, the juvenile court found that K.C. "[lacks] the ability to provide for the [children's] basic needs," and that she "has not complied with aftercare recommendations made by drug and alcohol treatment providers and required by the service plan." CP at 5.
K.C. appealed the decision of the juvenile court to the Court of Appeals, Division Three. She assigned error there to certain of the juvenile court's findings of fact and conclusions of law, to wit that: "[a]ll services... capable of correcting [K.C.'s] parental deficiencies within the foreseeable future had been offered or provided;" "[t]here is little likelihood that conditions will be remedied so that the child[ren] can be returned to [K.C.] in the near future," CP at 5, 13; "[c]ontinuation of the parent-child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home," CP at 6, 13; and "[i]t is in the best interest of the child[ren] that the parent-child relationship be terminated." CP at 7; see also CP at 6.
*25 K.C.'s argument at the Court of Appeals focused, primarily, on what she maintained was DSHS's failure to prove her current lack of sobriety. She contended that because, at the dependency hearing, DSHS had identified lack of sobriety as one of her parental deficiencies, but had not offered any evidence at the termination hearing that she was currently abusing alcohol or drugs, and because the juvenile court had made no finding in that regard, it was error for the juvenile court to conclude that she was an unfit parent. DSHS responded that it was not required to prove present use of drugs or alcohol in order to establish current unfitness and that the record provided substantial evidence to support each of the challenged findings of fact.
Although the Court of Appeals agreed with DSHS that the juvenile court's findings regarding K.C.'s current fitness were supported by clear, cogent and convincing evidence, it concluded that the order terminating K.C.'s parental rights was not justified because the juvenile court's finding that K.C. had "not complied with aftercare recommendations... required by the services plan," CP at 5, "is fatally flawed ... [because] it does not support the conclusion of law 2.6 which reads `There is little likelihood that conditions [K.C.'s parental deficiencies] will be remedied so that the child[ren] could be return to [K.C.] in the near future'." In re J.C., 78 Wash.App. 143, 151, 896 P.2d 720 (1995), review granted, 128 Wash.2d 1020, 913 P.2d 815 (1996). It indicated that, under its reading of RCW 13.34.180(5)(a), in order for such a conclusion to be justified, DSHS had to show "current use which renders the parent incapable of properly caring for the child ... and refusal to be treated or multiple failed attempts at treatment." J.C., 78 Wash.App. at 153, 896 P.2d 720. In its view, the juvenile court had found only the latter, i.e., that K.C. had failed at treatment, but had not identified any evidence to support its finding of the former, i.e., that K.C. is currently using substances that affect her capability to care for her children. In rejecting DSHS's argument, the Court of Appeals characterized its position as follows, "[DSHS's] position is another way of saying that the issue is not whether the parent is currently unfit, but whether the parent did what DSHS ordered him or her to do. That is not the law." J.C., 78 Wash.App. at 152, 896 P.2d 720. After DSHS's motion for reconsideration was denied by the Court of Appeals, DSHS petitioned this court for review of the Court of Appeals's decision. We granted the petition.

I
DSHS contends that the Court of Appeals erred in determining that when a parent's abuse of alcohol was used, even in part, to establish that a child is dependent, it is required to prove, at a subsequent termination hearing, that the parent is continuing to use intoxicating substances. K.C. responds, as she did at the Court of Appeals, that the juvenile court's findings of fact did not support its conclusion that there is "little likelihood that conditions will be remedied" in the near future because there was no testimony offered to rebut her testimony that she was taking care of her "problems," and consequently there was inadequate evidence to support the findings of the juvenile court. Supplemental Br. of Resp't at 1.
The statute that governs the showing that DSHS must make to justify an order terminating parental rights is RCW 13.34.190. It provides, in relevant part, that:
[a] court may enter an order terminating all parental rights to a child if the court finds that:
(1) The allegations contained in the petition as provided in RCW 13.34.180(1) through (6) are established by clear, cogent, and convincing evidence; [and]
....
(4) Such an order is in the best interests of the child.
K.C. does not assert that DSHS failed to establish the findings required to be made pursuant to RCW 13.34.180(1), (2), or (3).[8] This is understandable because these findings (that the children have been found to be dependent, that the court has entered dispositional *26 orders in the case, and that the children were removed from the custody of K.C. for at least six months after the finding of dependency) are historic matters that are objectively verifiable from the record. She asserts, rather, that the juvenile court erred in making the findings required under RCW 13.34.180(4), (5), and (6). Our focus is on RCW 13.34.180(5) because we are satisfied that substantial evidence in the record supports the juvenile court's finding that "services ordered under RCW 13.34.130 have been offered or provided." RCW 13.34.180(4). Indeed, although K.C. assigned error to the juvenile court's findings in this regard, she has not advanced any argument in her brief to this court or to the Court of Appeals relevant to that assignment of error. Insofar as the finding required by RCW 13.34.180(6), that continuation of the parent-child relationship diminishes the child's prospects for early integration into a stable and permanent home, such a finding necessarily follows from an adequate showing of the allegation made pursuant to RCW 13.34.180(5).
As noted above, in order for DSHS to prevail at a termination hearing, it must allege and prove, by clear, cogent, and convincing evidence "[t]hat there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." RCW 13.34.180(5). In 1993, prior to the initiation of the termination proceedings in this case, that statute was amended to add the following language:
In determining whether the conditions will be remedied the court may consider, but is not limited to ...
(a) Use of intoxicating or controlled substances so as to render the parent incapable of providing proper care for the child for extended periods of time and documented unwillingness of the parent to receive and complete treatment or documented multiple failed treatment attempts[.]
RCW 13.34.180(5), Laws of 1993, ch. 412, § 2, at 1639 (effective July 25, 1993) (emphasis added).
The Court of Appeals adopted the view of RCW 13.34.180(5) that "[w]hen the State relies on substance abuse to establish [that there is little likelihood that K.C.'s parental deficiencies will be remedied in the near future]" it must prove that the parent is currently abusing alcohol in order to justify an order terminating parental rights. J.C., 78 Wash.App. at 153, 896 P.2d 720. The plain wording of RCW 13.34.180(5), including the recently added subsection (a), neither compels nor supports such a holding. We reach that conclusion because the statute does not indicate, explicitly, whether the "use" to which it refers is current use, past use, or the likelihood of future use. The statute simply permits a court to consider a parent's use of intoxicating or controlled substances as a factor in determining whether the "conditions will be remedied" in the near future. RCW 13.34.180(5). Significantly, the Court of Appeals's interpretation of the statute stands in stark contrast to the long-standing position of this court that past history is a factor that a court may consider in weighing a parent's current fitness. See, e.g., In re Ross, 45 Wash.2d 654, 657, 277 P.2d 335 (1954). This position is sensible because if substance abuse is so extensive as to render a person unfit to parent and it is unlikely that the unfitness can be remedied in the near future, it makes little difference whether that abuse occurred in the past or present.
The Court of Appeals's reasoning is also inconsistent with our recent decision in In re K.R., 128 Wash.2d 129, 141-42, 904 P.2d 1132 (1995), where we said that RCW 13.34.180 "does not require relitigation [at a termination hearing] of the dependency determination [and that] no explicit finding of current parental unfitness is required. However, if the State proves the allegations set out [in RCW 13.34.180], an implicit finding of current parental unfitness has been made."
Furthermore, even if we were to conclude that only current alcohol abuse, and not past abuse, has relevance as to a parent's present unfitness, the statute does not limit the court to an examination of that substance abuse when it is determining whether conditions will be remedied. As DSHS points out, substance abuse is but one nonexclusive factor *27 that the court may consider in making this determination. Here there was much evidence presented to the juvenile court that could lead a reasonable person to conclude that K.C. continued to exhibit behaviors consistent with her identified parental deficiencies, whether or not substance abuse was a factor in causing these deficiencies. That evidence included testimony regarding her involvement in relationships with abusive men; her inability to control her own anger, especially toward another child; her dysfunctional interactions with her own children; and her inappropriate disciplining of the children, including a threat to "go out and get drunk or go out and get high." In our view, there was substantial evidence upon which the juvenile court could find that K.C.'s parental deficiencies had not abated, a finding that does not necessarily follow from, nor rely upon, fact that she had failed to follow the service plan. Based on this evidence, it also cannot be said that, at the termination proceeding, the juvenile court relied solely upon the fact that K.C. had abused drugs and alcohol, which had been established at a dependency hearing by a preponderance of the evidence.[9]See Santosky v. Kramer, 455 U.S. 745, 758, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982) ("use of a `fair preponderance of the evidence' standard in [parental rights termination] proceedings is inconsistent with due process"). See also In re K.R., 128 Wash.2d 129, 148, 904 P.2d 1132 (1995) (Johnson, J., dissenting).
Even in light of the greater evidentiary burden that exists at a termination hearing, as compared to the lesser burden at a dependency hearing, we conclude that substantial evidence in the record supports the juvenile court's findings, and contrary to the view expressed by the Court of Appeals, those findings satisfy the requirements of RCW 13.34.180 and .190. Consequently, it was error for the Court of Appeals to reverse the juvenile court's orders terminating K.C.'s parental rights.
Reversed.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] The children's father, Albert C., did not dispute the allegations in the dependency petitions that are discussed below. Neither did he contest the subsequent termination action. Consequently, he is not a party to the appeal.
[2] In each of the dependency petitions, DSHS alleged the following:

"1. [K.C.] has failed to provide adequate, safe shelter for the child(ren).
"....
"2. [K.C.] failed to maintain treatment services which were/are necessary for the child(ren)'s continued health.
"....
"3. [K.C.] has failed to secure drug and alcohol treatment services though the use and abuse of the chemicals render her incapable of effectively parenting her children.
"4. [K.C.] has failed to secure mental health counseling services though behaviors she displays or has displayed indicates the need.
"5. [K.C.] has failed to provide adequate supervision for the child(ren).
"a. [K.C.] leaves the child(ren) with caretakers who often are incapable of providing care for the children because of their use and abuse of drugs and/or alcohol.
"b. [K.C.] leaves the child(ren) with Gilbert [C.] who is known to be violent and physically assaultive.
"6. [K.C.] has failed to consistently provide adequate food for the children.
"7. [K.C.] failed to maintain the child(ren)'s clothing. The child(ren)'s clothing is usually smelly, dirty, ill-fitting and in disrepair." Exs. 4, 6, 8, 10 at 2-3.
[3] At a proceeding to establish a child's dependency, within the meaning of RCW 13.34.030, the burden of proof is a preponderance of the evidence. See RCW 13.34.130.
[4] RCW 26.44.020(12) defines "abused or neglected" as follows: "negligent treatment, or maltreatment of a child ... by any person under circumstances which indicate that the child's ... health, welfare, and safety is harmed."

"Negligent treatment" is further defined by RCW 26.44.020(16) as follows: "an act or omission which evidences a serious disregard of consequences of such magnitude as to constitute a clear and present danger to the child's health, welfare, and safety."
[5] The "service plan" or "services plan" referred to by the parties, the juvenile court, and the Court of Appeals is, apparently, the "agency plan" mandated by RCW 13.34.130(3)(b)(i), which requires DSHS to "specify what services the parent[] will be offered in order to enable them to resume custody" of the children placed in foster care pursuant to the order of dependency.
[6] K.C. was called as a witness by the State, and testified before any of the other witnesses for the State.
[7] RCW 13.34.180 provides, in relevant part, as follows:

"A petition seeking termination of a parent and child relationship ... shall allege:
"(1) That the child has been found to be a dependent child ...; and
"(2) That the court has entered a dispositional order ...; and
"(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency...; and
"(4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and
"(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future ... [and]
"....
"(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home[.]"
[8] See note 5, supra.
[9] At the dependency hearing, the juvenile court found that one of the facts alleged in the dependency petitions that had been proved by a preponderance of the evidence was that "the use and abuse of the chemicals [drugs and alcohol] render [K.C.] incapable of effectively parenting her children." Exs. 4, 6, 8, 10 at 2; see Exs. 5, 7, 9, 11 at 2.