IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Termination of: | ) | |
| | ) | No. 32234-3-III consolidated with |
| H.T., A.L. and K.T. | ) | 32235-1-III and 32236-0-III |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

FEARING, J. — J.L. appeals the termination of her parental rights to three children, A.L., K.T., and H.T. We reject J.L.'s request to reverse and dismiss the termination petition for insufficiency of evidence. Nevertheless, we vacate the termination orders and remand for a further hearing because the trial court relied on grounds for termination not earlier disclosed to J.L.

FACTS

J.L. bore three children: A.L., born November 14, 2005; K.T., born January 27, 2011; and H.T., born May 6, 2012. J.L. gave birth to A.L. when she was sixteen years old. J.L. and her children have always lived with J.L.'s mother, M.L., in Walla Walla. S.T., father to H.T., also lived in the home.

H.T. was born Mary 6, 2012, ten weeks premature. During the delivery, J.L. giggled and spoke slurringly. J.L.'s incongruous behavior led delivery room staff to suspect J.L. was high on methamphetamine. H.T. weighed three-and-a-half pounds at birth and suffered from respiratory distress. Care providers airlifted her from Walla Walla General Hospital to a neo-natal intensive care unit at Kadlec Regional Medical Center in Richland. General Hospital nursing staff contacted Department of Social and Health Services (DSHS) because of concern for J.L.'s behavior during H.T.'s birth and because, during the pregnancy, J.L. tested positive for marijuana, methamphetamine, and amphetamine.

On May 7, 2012, DSHS social workers Janel Torrescano and Brooke Martin visited J.L. at home and spoke with her outside. J.L. refused to permit ingress into the home, but brought her children, A.L. and K.T., outside the residence to speak with the social workers. Both children looked "content." Clerk's Papers (CP) at 3. The social workers asked J.L. about her drug use. J.L. admitted using marijuana, but denied using methamphetamine.

A drug screen conducted in April 2012 indicated that J.L. used methamphetamine during H.T.'s pregnancy. After reviewing the screen results in mid-May 2012, Janel Torrescano returned to J.L.'s home on May 16. J.L. again refused entry. Torrescano concluded that J.L. was then high and sedated. J.L. giggled during the interaction. As Torrescano left the home, a neighbor expressed concern to Torrescano about the

2

condition of J.L.'s home and reported that detectives had arrested S.T. at the home in the past.

On May 16, 2012, Janel Torrescano contacted the Walla Walla Police Department for assistance in entering J.L.'s house. The police department referred Torrescano to the Department of Corrections (DOC), who had an outstanding arrest warrant for S.T. for failing to report to his parole officer. DOC officers accompanied Torrescano back to J.L.'s house. On gaining entry to the home, Torrescano observed debris from floor to ceiling, dangling electrical wire, and an impassable hallway. Torrescano could not see the kitchen counters due to piles of dishes, food, and household cleaners. Four dogs and at least ten people inhabited the home. The dwelling reeked with cigarette smoke, mold, and animal waste. The trial court aptly characterized the home as a "hoarder['s]" house. CP at 208. Clutter, such as abandoned tools, dotted the home's yard.

During the home inspection, J.L. told Janel Torrescano that she, the children, and her boyfriend slept together on a king size water bed. Torrescano observed no space for a crib for H.T.'s use. According to Torrescano, the home also lacked provisions to care for an infant. Torrescano concluded that the living conditions were unsanitary and unsafe for children. On May 16, 2012, DSHS took A.L. and K.T. into protective custody and placed the two with a neighbor. H.T. remained in critical care at Kadlec Medical Center.

Subsequent to A.L.'s and K.T.'s placement in protective custody, DSHS gained information showing that the children had missed many well child medical examinations

3

and immunizations. A.L.'s teeth rotted and caused her pain.

On May 18, 2012, the State filed a dependency petition for all three of J.L.'s children. S.T. voluntarily relinquished his parental rights to H.T., and the trial court terminated his rights on May 8, 2013. On August 14, 2012, the trial court entered an agreed order of dependency for all three children. As part of the dependency order, the trial court directed J.L. to complete a drug and alcohol assessment and participate in any recommended substance abuse treatment. The trial court ordered J.L. to submit weekly to random urinalyses, abstain from drug and alcohol use, render her home safe and sanitary for occupation by her children, and participate in parenting classes after maintaining sobriety for 90 days. The trial court directed J.L. not to engage in criminal activity or associate with persons with a history of assaultive behavior or abusers of illicit substances; sign release of information forms; and maintain monthly contact with DSHS. The dependency order did not direct J.L. to undergo psychological testing or counseling or seek domestic violence victim's treatment and support.

During the ensuing months, J.L. did not participate in services offered by DSHS to assist in parenting. DSHS encountered difficulty contacting J.L. because she provided erroneous phone numbers. J.L. refused to acknowledge the risks to her children, failed to show for many scheduled visits with the children, and appeared to be under the influence of illegal drugs or alcohol during some visits. J.L. encountered difficulty in managing all three children during the few visits. Although the children knew J.L. as their mother, the

4

children lacked bonding with her. She failed to bring diapers, toys, or snacks to visits with H.T. DSHS suspended visits in August 2013.

Infant H.T. suffers from serious acid reflux and will need surgery, with attendant aftercare. The malady interferes with her ability to eat and digest food. H.T.'s lungs were undeveloped at birth. As a result, she cannot reside in a home with animal dander, dust, mold, or smoke.

A.L. exhibited signs of an attachment disorder and anxiety. She wet herself, withdrew at school, and reluctantly expressed her needs. A care provider placed A.L. on medication for attention deficit disorder.

The court held dependency review hearings on November 20, 2012 and December 30, 2013. J.L. did not attend either hearing. In the meantime, J.L. did not submit to drug and alcohol assessment and treatment. On December 6, 2012, law enforcement arrested J.L. for possession of methamphetamine, and she remained incarcerated until February 7, 2013. After her release, J.L. was jailed eight additional times in the subsequent months for violating conditions of release.

PROCEDURE

On July 22, 2013, DSHS petitioned to terminate J.L.'s parental rights to all three children. J.L. then sat in jail for violating the conditions of her community custody. In early October 2013, J.L. returned to her mother's home. On October 24, 2013, J.L.'s termination trial began, but J.L. was not present because of an arrest the prior day for

5

being unable to produce a urine sample pursuant to conditions of release.

During the October hearing, DSHS Social Worker Loni Conklin testified that continuation of J.L.'s parental relationship is detrimental to each child. Conklin opined that uncertainty in foster care for the children led to behavioral issues and attachment disorders in the two oldest children. Conklin declared that H.T. did not know her mother, since H.T. had little meaningful contact with her mother since birth. After hearing testimony on October 24, the trial court continued the trial to allow J.L. to complete an inpatient treatment program and to allow a transition of the children into a home where the parents wished to adopt all three. DSHS then identified a home wherein the foster parents wished to adopt all three children.

On November 26, 2013, J.L. completed a 28-day inpatient treatment program. J.L. attended parenting classes while in substance abuse treatment. After J.L.'s release from the inpatient program, DSHS granted her visitation with the children. According to a DSHS social worker, J.L. interacted well with the children during the visits, except with H.T.

Trial resumed on December 20, 2013. By that date, all three children resided in the new foster home. During the hearing, Loni Conklin testified that a 28-day inpatient drug program was inadequate to rid one of methamphetamine addiction. Conklin expected more substance abuse relapses and a longer rehabilitation until J.L. could control her addiction. Conklin urged termination because of the prospective adoptions.

6

During the December 20 hearing, J.L. testified that three to six months remained in her intensive outpatient substance abuse treatment and that treatment aftercare could last 24 months. At the time of the hearing, J.L. had been sober for two months. She pledged motivation to complete treatment and maintain sobriety. J.L. offered recent photographs of her mother's house as evidence that she complied with the order to render the home safe for her children. J.L. testified that her children bonded with her during the two recent visits.

On January 28, 2014, the trial court terminated J.L.'s parental rights to all three children. In so ruling, the trial court found:

> There are still numerous services for the mother to complete prior to the court even contemplating sending the children home to her, including parenting classes, psychological testing and counselling, finding a permanent home, establishing a stable source of income, continued outpatient drug treatment, domestic violence victim's treatment and support. The successful completion of these items and demonstrated stability would take at least a year, most likely longer, depending on relapse frequency and length.

CP at 207-08.

## LAW AND ANALYSIS

J.L. contends: (1) the evidence does not support the trial court's determination that her parental deficiencies will not be remedied in the near future, (2) the evidence does not support the trial court's finding that termination of parental rights is in the best interest of the children, (3) the trial court violated her constitutional due process right to notice when

7

it ordered her parental rights terminated based on parenting deficiencies that were not identified during the dependency process, or proven at trial, (4) the trial court erred when it, in part, terminated her parental rights because she lived with her mother and did not have a "stable source of income" at the time of trial, (5) DSHS failed to provide to her all necessary services capable of correcting her parental deficiencies, and (6) her defense counsel was ineffective for failing to request a continuance until a pending home study could be completed on J.L.'s mother's house to determine if the children could be returned to J.L. We address these contentions in such order after answering a preliminary question.

*Issue 1: Should we review findings of fact entered by the trial court?*

*Answer 1: No. Although J.L. assigns error to many findings, J.L. presents no argument in support of most assignments.*

J.L. assigns error to findings of fact 2.2(e)(2), 2.2(e)(3), 2.2(e)(4), 2.2(e)(5), 2.2(e)(12), 2.2(e)(13), 2.2(f)(3) and 2.2(f)(4). These findings concern discrete deficiencies in J.L.'s parenting. Nevertheless, J.L. provided no argument in her brief in support of these assignments. This court does not review errors alleged but not argued, briefed, or supported with citation to authority. RAP 10.3; *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589 (1968); *Meeks v. Meeks*, 61 Wn.2d 697, 698, 379 P.2d 982 (1963); *Avellaneda v. State*, 167 Wn. App. 474, 485 n.5, 273 P.3d 477 (2012). Therefore, we will not consider challenges to the listed findings of fact. J.L. assigns error to other

findings of fact that concern her overall fitness as a parent, and she provides argument in her brief in support of the assignments. When relevant, we will address those assignments.

*Issue 2: Whether substantial evidence supports the trial court's finding that there was little likelihood that conditions would be remedied so that J.L.'s children could return to her in the near future?*

*Answer 2: Yes.*

J.L. asserts two errors that, if we acknowledged, would require us to dismiss the termination petition rather than remanding the case for further review by the trial court. Therefore, we address these two assignments of error first.

J.L. initially contends that substantial evidence does not support the trial court's finding that there was little likelihood that her children could be returned to her in the near future. She argues that DSHS did not meet its burden of establishing this element by clear, cogent, and convincing evidence since she engaged in outpatient treatment at the time of trial; she and her mother had cleaned, tidied, replaced carpet, freshly painted, and decorated each of the children's bedrooms for a return to home; and she had no history of failed attempts at reforming herself as a parent.

Termination of parental rights is a two-step process. *In re Welfare of C.B.*, 134 Wn. App. 942, 952, 143 P.3d 846 (2006). First, the State must show that the six statutory requirements under RCW 13.34.180(1) are established by clear, cogent, and convincing

evidence. RCW 13.34.190(1)(a). This means the State must show that the ultimate fact in issue is "highly probable." *In re Dependency of K.R.*, 128 Wn.2d 129, 141, 904 P.2d 1132 (1995); *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). One of those requirements entails promptly remedying parental deficiencies. Under RCW 13.34.180(1)(e), DSHS must show:

> That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. The presumption shall not arise unless the petitioner makes a showing that all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future have been clearly offered or provided. In determining whether the conditions will be remedied the court may consider, but is not limited to, the following factors:
>
> (i) Use of intoxicating or controlled substances so as to render the parent incapable of providing proper care for the child for extended periods of time or for periods of time that present a risk of imminent harm to the child, and documented unwillingness of the parent to receive and complete treatment or documented multiple failed treatment attempts;
>
> (ii) Psychological incapacity or mental deficiency of the parent that is so severe and chronic as to render the parent incapable of providing proper care for the child for extended periods of time or for periods of time that present a risk of imminent harm to the child, and documented unwillingness of the parent to receive and complete treatment or documentation that there is no treatment that can render the parent capable of providing proper care for the child in the near future; or
>
> (iii) Failure of the parent to have contact with the child for an extended period of time after the filing of the dependency petition if the parent was provided an opportunity to have a relationship with the child by the department or the court and received documented notice of the potential consequences of this failure, except that the actual inability of a parent to have visitation with the child including, but not limited to, mitigating

circumstances such as a parent's current or prior incarceration or service in the military does not in and of itself constitute failure to have contact with the child.

The trial court's factual findings under RCW 13.34.180(1) must be upheld if supported by substantial evidence from which a rational trier of fact could find the necessary facts by clear, cogent and convincing evidence. *In re Dependency of C.B.*, 61 Wn. App. 280, 286, 810 P.2d 518 (1991). Because only the trial court has the opportunity to hear the testimony and observe the witnesses, its decision is entitled to deference and this court will not judge the credibility of the witnesses or weigh the evidence. *In re Welfare of M.R.H.*, 145 Wn. App. 10, 24, 188 P.3d 510 (2008).

When DSHS relies on substance abuse to establish that there is little likelihood that parental deficiencies will be remedied in the near future, it need not prove that the parent is currently abusing alcohol or another substance in order to justify an order terminating parental rights. *In re Dependency of J.C.*, 130 Wn.2d 418, 427-28, 924 P.2d 21 (1996). The statute permits a court to consider a parent's use of intoxicating or controlled substances as a factor in determining whether the "conditions will be remedied" in the near future. RCW 13.34.180(1)(e)(i); *In re Dependency of J.C.*, 130 Wn.2d at 427-28. Past history is a factor that a court may consider in weighing a parent's current fitness. *In re Welfare of Ross*, 45 Wn.2d 654, 657, 277 P.2d 335 (1954). This position is sensible because if substance abuse is so extensive as to render a person unfit to parent and it is unlikely that the unfitness can be remedied in the near future, it makes

11

little difference whether that abuse occurred in the past or present. *In re Dependency of J.C.*, 130 Wn.2d at 428.

The "near future" is a key term in RCW 13.34.180(1)(e). The parental deficiencies must be remedied such that the child may be returned to the parent in the "near future." "Near future" is determined from the child's point of view. *In re Dependency of A.C.*, 123 Wn. App. 244, 249, 98 P.3d 89 (2004). What constitutes "near future" depends on the age of the child and the circumstances of the child's placement. *In re Dependency of T.L.G.*, 126 Wn. App. 181, 205, 108 P.3d 156 (2005). The cases support the proposition that the younger the child the shorter is the "near future." A matter of months for young children is not within the foreseeable future to determine if there is sufficient time for a parent to remedy his or her parental deficiency. *In re Welfare of M.R.H.*, 145 Wn. App. at 28 (2008). Eight months was not in the foreseeable future of a four-year-old. *In re Welfare of Hall*, 99 Wn.2d 842, 844, 850-51, 664 P.2d 1245 (1983). One year was not in the foreseeable future of a three year-old. *In re Dependency of A.W.*, 53 Wn. App. 22, 31-32, 765 P.2d 307 (1988). Six months was not foreseeable in the near future of a 15 month-old. *In re Dependency of P.D.*, 58 Wn. App. 18, 27, 792 P.2d 159 (1990).

The focus of RCW 13.34.180(1)(e) is "whether the identified deficiencies have been corrected." *M.R.H.*, 145 Wn. App. at 27. Even when there is evidence that the parent may eventually be capable of correcting parental deficiencies, termination is still

12

appropriate when deficiencies will not be corrected within the foreseeable future. *In re Dependency of A.W.*, 53 Wn. App. 22, 32, 765 P.2d 307 (1988). If the State offers or provides all necessary services reasonably capable of correcting parental deficiencies within the foreseeable future, and the parent does not substantially improve within a year of the dependency order, a presumption arises that the State has established RCW 13.34.180(1)(e); *In re Welfare of A.G.*, 155 Wn. App. 578, 590, 229 P.3d 935 (2010). If RCW 13.34.180(1)(e)'s rebuttable presumption applies, it shifts the burden of production, but the State must still convince the trial court that it is highly probable that the parent would not improve in the near future. *In re Welfare of C.B.*, 134 Wn. App. at 956 (2006). Because a parent's constitutional rights are implicated, the presumption shifts only the burden of production to the parent. *C.B.*, 134 Wn. App. at 955. The State retains the burden of convincing the court that it is highly probable that the mother would not have improved in the near future. *C.B.*, 134 Wn. App. at 956.

The State need not give a parent an unlimited time to become a fit parent. *In re Dependency of T.R.*, 108 Wn. App. 149, 167, 29 P.3d 1275 (2001). When it is eventually possible, but not imminent, for a parent to be reunited with a child, the child's present need for stability and permanence is more important and can justify termination. *T.R.*, 108 Wn. App. at 166.

We later rule that the trial court should not have relied, in part, on parental deficiencies for which DSHS gave no notice. In addressing this first assignment of error,

13

we exclude that evidence sustaining the deficiencies for which J.L. received no notice. Nevertheless, substantial evidence supports the trial court's finding of little likelihood that J.L.'s children could be returned to her in the near future. Photographs showed improvement in the condition of the home. J.L. concluded eight hours of parenting instruction while in inpatient treatment, but she provided no details of the nature and success of the treatment. At the time of the second trial date, J.L. had just completed a 28-day inpatient drug treatment program. Nevertheless, she still faced months of intensive outpatient treatment along with two years of follow-up treatment care. DSHS presented testimony that J.L. needed further parenting instruction once sober for a longer period of time and that she likely would encounter substance abuse relapses. Given J.L.'s slow start in the dependency process, the trial court could reasonably determine that she would not sustain her recent gains in sobriety and parenting long enough for her children to return to her in the near future. J.L. presented no testimony from substance abuse counselors as to her sobriety. Under existing Washington precedent, such evidence qualifies as "substantial" for the purpose of RCW 13.34.180(1)(e); *In re Welfare of T.B.*, 150 Wn. App. 599, 609, 209 P.3d 497 (2009).

J.L. relies on *In re Welfare of C.B.*, 134 Wn. App. at 956 (2006) to argue the insufficiency of evidence about the likelihood of returning the children to her in the near future. In *In re Welfare of C.B.*, this court reversed a parental termination order because the mother showed significant remediation by the time of trial. DSHS contended that the

14

past behavior of the mother established the rebuttable presumption. The mother contended that she rebutted that presumption because she made substantial progress. The mother's home had earlier been found unfit for children. Nevertheless, DSHS presented no testimony at the termination hearing that the mother's home was unsafe. Although she was dilatory, the mother completed parenting classes. She was more dilatory in attending anger management classes, but was in attendance at the time of the termination trial.

In *Welfare of C.B.*, the mother's primary deficiency related to drug use. This court held that the mother met her burden to produce evidence that she was improving in that area because she completed her chemical dependency programs and presented evidence from her counselors and friends that her prognosis was good and that she was a different person. Even the State conceded that the mother completed all drug treatment programs. Her only outstanding service was for anger management, which she was enrolled to begin shortly after the termination hearing. DSHS presented no evidence that it would take more than one year to reunite the mother with the children. To the contrary, the only further treatment needed would end in four months.

Unlike in *Welfare of C.B.*, J.L. needed two years, at the time of trial, of substance abuse treatment. J.L. had yet to learn how to care for H.T., who suffered from significant disabilities. J.L. encountered difficulties in visiting with the children. She needed additional parenting instruction.

15

A case with similar factors is *In re Dependency of A.C.*, 123 Wn. App. 244, 98 P.3d 89 (2004). The DSHS social worker testified that the mother could regain custody of the children only after she completed at least one year of sobriety. The trial court and court of appeals relied on this testimony when finding an unlikelihood that conditions would be remedied in the near future.

*Issue 3: Whether substantial evidence supports the trial court's finding that termination of J.L.'s parental rights was in the children's best interests.*

*Answer 3: Yes.*

J.L. next contends that the trial court erred in finding that termination of her parental rights was in her children's best interests. The State contends that substantial evidence supports the trial court's finding.

The second step in DSHS' burden in a parental termination case involves proving by a preponderance of evidence that termination is in the child's best interests. RCW 13.34.190(1)(b). As noted in *In re Welfare of A.B.*:

> By virtue of RCW 13.34.180(1) and RCW 13.34.190, a Washington court uses a two-step process when deciding whether to terminate the right of a parent to relate to his or her natural child. The first step focuses on the adequacy of the parents and must be proved by clear, cogent, and convincing evidence. The second step focuses on the child's best interests and need be proved by only a preponderance of the evidence. Only if the first step is satisfied may the court reach the second.

168 Wn.2d 908, 911, 232 P.3d 1104 (2010) (footnotes omitted). No specific factors are involved in a best interest determination, and each case must be decided on its own facts

and circumstances. *In re Welfare of M.R.H.*, 145 Wn. App. at 28 (2008). When a parent has been unable to rehabilitate over a lengthy dependency period, a court is justified in finding termination in the child's best interest rather than leaving the child in the limbo of foster care for an indefinite period while the parent seeks to rehabilitate herself. *In re Welfare of A.G.*, 155 Wn. App. at 595 (2010).

In *In re Welfare of M.R.H.*, 145 Wn. App. at 28, this court affirmed a trial court's finding that termination of parental rights served the children's best interest. The children's counselors testified that reintroducing the parent into the lives of the children could cause them to be anxious, to have extreme negative behavioral responses, and the children needed structure and stability. The children's guardian ad litem testified the children were happy and bonded to their foster parents. DSHS presented evidence that adoption of the children was in their best interests so that they would not be in limbo any longer. The children had been dependent for nearly two and one-half years. Similar testimony supports the trial court's determination that J.L.'s children's best interests lay in termination.

*Issue 4: Whether DSHS deprived J.L. of due process during the termination proceeding as a result of a lack of notice of grounds on which DSHS sought termination?*

*Answer 4: Yes.*

J.L. contends that she was deprived of due process because the trial court improperly based its decision to terminate her parental rights on deficiencies not

17

identified before the termination hearing or proved at the hearing. J.L. argues that she cannot be faulted for failing to remedy a deficiency that was not proven at trial and for which she had no notice. J.L. emphasizes the trial court's finding of fact 12 that declared psychological testing and counseling and domestic violence victim treatment and support were needed prior to the court contemplating returning the children to J.L. Because J.L. did not receive notice of these purported parental deficiencies on which the trial court ultimately based its decision, we vacate the termination and remand for an additional hearing.

Both the United States and Washington Constitutions recognize a parent's fundamental liberty interest in care and custody of her children. U.S. CONST. amends. V, XIV; WASH. CONST. art. I, § 3; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re Custody of Smith*, 137 Wn.2d 1, 13-14, 969 P.2d 21 (1998). The due process clause of the Fourteenth Amendment protects a parent's right to the custody, care, and companionship of her children. *In re Welfare of Key*, 119 Wn.2d 600, 609, 836 P.2d 200 (1992). That right cannot be abridged without due process of law. U.S. CONST. amend. XIV; *In re Dependency of A.M.M.*, 182 Wn. App. 776, 790-91, 332 P.3d 500 (2014). Accordingly, parental termination proceedings are afforded strict due process protections. *In re Darrow*, 32 Wn. App. 803, 806, 649 P.2d 858 (1982).

Due process requires that parents have notice, an opportunity to be heard, and the right to be represented by counsel. *Key*, 119 Wn.2d at 611; *In re Welfare of Myricks*, 85

18

Wn.2d 252, 254, 533 P.2d 841 (1975). More specifically, the due process protections afforded parents in a termination hearing include notice, open testimony, time to prepare and respond to charges, and a meaningful hearing before a competent tribunal in an orderly proceeding. *In re Dependency of H.W.*, 70 Wn. App. 552, 555 n.1, 854 P.2d 1100 (1993); *In re Moseley*, 34 Wn. App. 179, 184, 660 P.2d 315 (1983). The trial court should assure that the parent is afforded a full and fair opportunity to present evidence or rebut evidence presented against him. *In re Dependency of A.M.M.*, 182 Wn. App. at 791. Courts consider notice to a parent of the specific issues to be considered at a termination hearing to be critical. *In re Dependency of A.M.M.*, 182 Wn. App. at 791; *In re Welfare of Martin*, 3 Wn. App. 405, 410, 476 P.2d 134 (1970). This latter principle controls our holding.

The well-reasoned *In re Dependency of A.M.M.*, 182 Wn. App. 776 (2014), governs the disposition of this issue. In fairness to the trial court, this court decided *A.M.M.* after the trial court's order of termination. In *A.M.M.*, Brittany Knopff appealed the trial court's order terminating her parental rights to her three children. Knopff contended, among other assertions, that DSHS failed to satisfy the exacting requirements of due process when it neglected to provide notice of a parental deficiency on which the trial court relied in terminating her parental rights. This court held that DSHS failed to provide Knopff with constitutionally adequate notice of one of the parental deficiencies on which the trial court relied in terminating her parental rights. Accordingly, we

19

reversed and remanded to the trial court with instructions to strike from its findings the parental deficiency of which she did not receive adequate notice and to consider whether, on the basis of the remaining parental deficiencies, termination of parental rights is nonetheless warranted.

In *A.M.M.*, an order of dependency directed Brittany Knopff to participate in intensive outpatient chemical dependency treatment, to undergo random urinalysis twice per week, and to engage in parenting classes. In a later dependency review order, the trial court directed Knopff to participate in a psychological evaluation with a parenting component. Knopff did not complete her drug and alcohol treatment, never produced a clean urinalysis, and failed to appear for nearly half of her court hearings. The psychological evaluation concluded that Knopff could not remediate her clinical and parenting deficits to a degree that would consistently and effectively meet the safety and developmental needs of her children. At the time of the evaluation, Knopff admitted that she was using heroin. Knopff failed to consistently take advantage of visits with her children and visits negatively impacted the children.

On appeal, Brittany Knopff argued that DSHS deprived her of the constitutional right to adequate notice because the trial court terminated her parental rights based, in part, on her lack of knowledge regarding her children's developmental needs, despite the fact that she was not notified that this would be considered a basis for termination. The record supported Knopff's contention. Neither the termination petition nor the

20

dependency petition stated that Knopff's lack of knowledge regarding her children's developmental needs constituted a parental deficiency. The record also lacked notice to Knopff that she could lose her parental rights if she did not adequately familiarize herself with her children's developmental needs. Nonetheless, the trial court found that Knopff's ignorance regarding her children's developmental needs constituted a parental deficiency. Since the trial court findings did not declare that other grounds alone supported termination, this court rejected DSHS' argument that findings regarding other deficiencies required affirmation of the termination.

Our record on appeal fails to show notice to J.L. of all the parental deficiencies used as the basis for terminating her parental rights. The order of termination declares that domestic violence victim's treatment and support would be necessary before the trial court could return J.L.'s children to her. Nevertheless, the order of dependency did not direct and no review order directed J.L. to seek such treatment or support. The order of termination also lists J.L.'s need to complete psychological testing and counseling before the court would return her children to her. Again, the record lacks evidence that J.L. had notice that her mental health or psychological state was a deficiency that could result in the loss of her parental rights.

DSHS does not recognize the lack of notice as an issue on appeal. DSHS does not directly address J.L.'s constitutional challenge, but obliquely argues that, if J.L. had met the case plan and maintained sobriety earlier in the dependency process, DSHS could

have evaluated her need for additional services and informed the trial court of the need at the dependency review hearings. DSHS emphasizes J.L.'s inability to achieve and maintain her sobriety and her repeated incarcerations. DSHS thereby sidesteps apt law by accentuating bad facts. J.L.'s troubling parental deficiencies do not excuse deprivation of her constitutional rights. We follow *A.M.M.*, vacate the termination orders, and remand to the trial court to assess whether the remaining parental deficiencies merit termination of parental rights.

*Issue 5: Whether the trial court impermissibly relied on J.L.'s poverty when terminating J.L.'s parental rights?*

*Answer 5: No.*

Because we remand this case to the trial court for additional review, we also address other arguments of J.L. to determine if we should give the lower court additional directions. J.L. next contends that the trial court improperly relied on her poverty and lack of independent housing in ordering termination. She argues that poverty alone cannot serve as the basis to terminate a parent's rights to raise her children, and that, if lack of independent housing is a deficiency, the State should have offered housing services. The State argues that the trial court did not terminate J.L.'s parental rights on socio-economic factors.

The termination order's finding of fact 2.2(e)(12) lists "finding a permanent home, [and] establishing a stable source of income" as services the mother needed to complete

22

before return to her of the children. CP at 207. Contrary to the State's assertion, the trial court based its decision to terminate, at least partially, on those factors. Nevertheless, the trial court also based the termination on numerous other grounds. We must decide whether a permanent home and a source of income may form, in part, the basis of a parental rights termination.

Poverty of a parent does not of itself make the children dependent within the meaning of the statute, unless that poverty renders the children destitute of a suitable home. *In re Welfare of Warren*, 40 Wn.2d 342, 345, 243 P.2d 632 (1952). Poverty and homelessness alone do not constitute negligence or maltreatment of a child. *In re Dependency of Schermer*, 161 Wn.2d 927, 945-46, 169 P.3d 452 (2007). The tendrils of parental affection entwine around the offspring of the poor with as much strength as they do around the children of the rich; if, indeed, with not greater strength by reason ordinarily of more intimate relationships and sacrifices that have to be made and which tend to strengthen mutual love and affection. *In re Application of Fields*, 56 Wash. 259, 266-67, 105 P. 466 (1909). Nevertheless, a court may consider a family's financial resources when additional bases lie for finding parents unfit. *Schermer*, 161 Wn.2d at 946. A child can be found dependent when the child is homeless as a result of the parent's poverty, but the State should offer housing services to help remedy the problem if poverty and lack of housing is the only issue. *Schermer*, 161 Wn.2d at 946.

We need not decide if unsafe housing conditions at the grandmother's home,

particularly for H.T., alone merit termination of parental rights. Even excluding those grounds on which J.L. lacked notice, J.L.'s dearth of income and lack of a residence other than her mother's home were not the sole basis for the trial court's termination order. The trial court also found J.L. unfit based in part on her lack of progress in establishing and maintaining her sobriety and improving her parenting skills. Therefore, the trial court did not err in taking into consideration her finances and housing resources.

*Issue 6: Whether DSHS provided all necessary services capable of correcting J.L.'s parental deficiencies?*

*Answer 6: This issue is moot since the list of necessary services forwarded by J.L. would only address deficiencies on which DSHS may not rely upon remand.*

J.L. contends that DSHS did not provide all necessary services to correct her parental deficiencies because it only offered services to address those deficiencies identified in the dependency order and not those that eventually appeared in the termination order. DSHS answers that it was not required to impart the additional services because those services would not help unless and until J.L. solved her drug addiction.

When DSHS seeks to terminate a parent's rights, it must show, in part, by clear, cogent, and convincing evidence:

> That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within

24

the foreseeable future have been expressly and understandably offered or provided.

RCW 13.34.180(1)(d). To comply with the requirements of RCW 13.34.180(1)(d):

> the State must tailor the services it offers to meet each individual parent's needs DSHS, however, is not required to offer services when a parent is unable to benefit from the services. Further, even where the State inexcusably fails to offer a service to a willing parent . . . termination is appropriate if the service would not have remedied the parent's deficiencies in the foreseeable future.

*In re Welfare of S.J.*, 162 Wn. App. 873, 881, 256 P.3d 470 (2011) (citations omitted) (internal quotation marks omitted).

We previously ruled that the trial court terminated J.L.'s parental rights based on two deficiencies for which she received no notice: the need for domestic violence services and want of mental health treatment. The record shows no offering by DSHS of services to address these deficiencies. We remand for the trial court to determine whether, after excluding these grounds, other grounds are sufficient for termination. Since the trial court should not rely on the two grounds, services to correct these problems are immaterial. Therefore, we issue no ruling on this assignment of error.

*Issue 7: Whether defense counsel was ineffective in failing to request a continuance until a pending study of maternal grandmother's home was complete?*

*Answer 7: No.*

J.L. alleges ineffective assistance of counsel for her defense attorney's failure to request a continuance to allow time for DSHS to complete a home study of J.L.'s

25

mother's home. J.L. argues that due process entitles her to introduce all relevant evidence for the trial court to consider prior to termination of her rights. J.L. argues that her trial counsel's performance was deficient because, if she had requested a continuance, it would likely have been granted in light of *In re Welfare of R.H.*, 176 Wn. App. 419, 309 P.3d 620 (2013). In response, DSHS cites a home visitation study it conducted three months prior to trial. The social worker ended the visitation prematurely due to the smell of animal urine and cigarette smoke.

A claim of ineffective assistance of counsel requires proving that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). This court presumes that counsel was effective. *Strickland v. Washington*, 466 U.S. 668, 689-90, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To rebut the strong presumption that counsel's performance was effective, the defendant bears the burden of establishing the absence of any conceivable legitimate tactic explaining counsel's performance. *State v. Hamilton*, 179 Wn. App. 870, 879-80, 320 P.3d 142 (2014). In order to establish actual prejudice, a person claiming ineffective assistance of counsel must show that the trial court likely would have granted the motion their counsel failed to make. *Hamilton*, 179 Wn. App. at 882.

26

Because of the parent's fundamental constitutional rights at stake in termination hearings, due process requires that parents have the ability to present all relevant evidence for the juvenile court to consider prior to terminating a parent's rights. *In re Welfare of R.H.*, 176 Wn. App. at 425-26 (2013). A trial court's denial of a continuance to present additional evidence in a proceeding to terminate a parent's rights can be reversible error. *In re Welfare of Shantay C.J.*, 121 Wn. App. 926, 937, 91 P.3d 909 (2004). Nevertheless, the trial court has broad discretion to grant or deny a continuance. *R.H.*, 176 Wn. App. at 424-25.

We do not decide whether J.L.'s trial counsel's performance fell below an objective standard of reasonableness, because J.L. cannot show that failure to request the continuance prejudiced her sufficiently to warrant reversal. Unsafe housing was one of several deficiencies J.L. needed to remedy during the dependency proceeding, but J.L. had not made significant progress in other deficiencies such as substance abuse treatment and parenting classes. Therefore, J.L. cannot establish that the trial court would have denied the parental termination if a home study was performed. She shows no prejudice.

We recognize significant passage of time between the December 2013 trial and our remand to the trial court. When the trial court reviews this case on remand, J.L. may renew her motion for a home study before entry of a final order. The trial court will then exercise its discretion in determining whether to grant the motion for the study.

27

Nos. 32234-3-III; 32235-1-III; 32236-0-III
*In re the Termination of: H.T., A.L. and K.T.*

## CONCLUSION

We reject J.L.'s request to dismiss the termination petitions and orders. Nevertheless, we vacate the orders and remand to the trial court to decide whether to terminate J.L.'s parental rights without consideration of any failure of J.L. to engage in psychological testing and counseling or domestic violence victim treatment and support. On remand, the trial court need not entertain new evidence but may, because of the passage of time, exercise its discretion in allowing either party the opportunity to present evidence of conditions impacting J.L.'s ability to parent since the December 2013 hearing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

I CONCUR:

Siddoway, C.J.

28

Nos. 32234-3-III; 32235-1-III and 32236-0-III

BROWN, J. (dissenting) — Sadly, J.L. did too little, too late. Given this record, the trial court correctly decided: (1) The State proved the six alleged RCW 13.34.180(1) elements by clear, cogent, and convincing evidence; (2) J.L. was unfit because her unfitness to parent these children is implicitly if not explicitly stated after establishing the RCW 13.34.180(1) elements under *In re Dependency of K.R.*, 128 Wn.2d 129, 141-42, 904 P.2d 1132 (1995); and (3) the children's best interests were served by termination as required by RCW 13.34.190. After noting the children were in "a foster to adopt placement," the court found: "The [Court Appointed Special Advocate] testified that the children needed to be in a stable, safe, permanent home as soon as possible. [J.L.] is unable to provide this kind of home, now or in the foreseeable future." Clerk's Papers (CP) at 255.[1]

The record at CP 251-52 shows the many basic services the State expressly and understandably offered J.L. under RCW 13.34.180(1)(d). The dependency order partly directed J.L. to "[c]omplete a drug and alcohol assessment and participate in any

---

[1] Similar findings, conclusions, and orders were entered for each of the three children.

recommended treatment." CP at 252. The court reasonably adopted the State's view that J.L. needed to complete drug treatment before other offered services could be started with any chance of success. J.L. never participated in a drug and alcohol assessment; thus, no opportunity existed to identify additional helpful services. The prerequisite service to all other services was drug treatment. Sequential services are appropriate in cases like this. *See In re Termination of S.J.*, 162 Wn. App. 873, 882-83, 256 P.3d 470 (2011).

Significantly, the trial court followed the outline of the RCW 13.34.180(1)(a)-(f) allegations at CP 251-55 when making its findings. The court appropriately discusses *services* under part (d) and *timeliness* under part (e) at CP 253-54, including the incorrectly criticized portion of the record. There, the court aptly reasons, in essence, J.L.'s failure to timely begin and successfully complete drug treatment necessarily delayed completion of the other basic services offered her for too long. The court foresaw J.L. would still, even then, likely need advanced, perhaps yet unidentified, services like psychological testing and counseling after the basic services were completed and they "would take at least a year, most likely longer, depending on relapse frequency[2] and length." CP at 252-54. In context, the court's criticized findings are intended to support RCW 13.34.180(1)(e)'s timeliness requirements, not to retroactively set new service requirements violating due process notice requisites.

---

[2] The record shows J.L.'s history of numerous relapses.

J.L.'s trial began October 2013, some 17-months after the dependency was filed, and was not completed until two months later; J.L. did not even enter her 28-day drug treatment until *after* trial began. While J.L. tardily completed her initial treatment before trial's end, she still had three to six months of intensive outpatient treatment followed by additional regular outpatient treatment. Report of Proceedings at 99. J.L. testified aftercare could take 12, 18, or 24 months. *See In re Welfare of T.B.*, 150 Wn. App. 599, 608-11, 209 P.3d 497 (2009) (evidence the mother participated in a substance abuse treatment group for six weeks before the termination trial commenced did not support a finding that her deficiencies would be remedied so that the child could be returned home in the near future). "Where a parent has been unable to rehabilitate over a lengthy dependency period, a court is 'fully justified' in finding termination in the child's best interest rather than 'leaving [the child] in the limbo of foster care for an indefinite period while [the parent] sought to rehabilitate [herself].'" *In re Dependency of T.R.*, 108 Wn. App. 149, 167, 29 P.3d 1275 (2001) (some alterations in original) (quoting *In re Dependency of A.W.*, 53 Wn. App. 22, 33, 765 P.2d 307 (1988)).

In my view, the trial court correctly found little likelihood existed for J.L. to remedy her parental inadequacies so that the children could be returned to her in the near future under RCW 13.34.180(1)(e). Finishing an early part of her treatment midtrial does not make J.L. a fit parent. The State did not seek to terminate J.L.'s rights based on socio-economic conditions; drug treatment was the court's focus. While some progress was reported at the grandparents' home by the end of the termination hearing, "there were still a number of concerns regarding the grandparents that had not been addressed,

3

including the medical neglect issues." CP at 255. Because the trial court's criticized remarks were doubtlessly intended to support RCW 13.34.180(1)(e)'s timeliness requirements and not meant to retroactively judge J.L. by new service requirements without notice, no due process violation occurred. I would hold the trial court did not err in terminating J.L.'s parent-child relationship with the three children. Therefore, I respectfully dissent.

Brown, J.

4