229 P.3d 818 (2010)
In the Matter of the Dependency of P.P.T., d.o.b. 9/12/2000; J.J.I., d.o.b. 2/21/2005; O.L.T., d.o.b. 8/17/2006.
No. 63551-4-I, 63393-7-I, 63394-5-I, 63552-2-I, 63553-1-I, 63395-3-I.
Court of Appeals of Washington, Division 1.
February 16, 2010.
Publication ordered date April 5, 2010.
*819 Lila Jane Silverstein, Washington Appellate Project, Seattle, WA, for Appellant.
Trisha L. McArdle, Ofc. of The Atty. Gen., Seattle, WA, for Respondent.
Amanda J. Beane, Kathleen O'Sullivan, Karen Brunton, Seattle, WA, for Other Parties.
LEACH, J.
¶ 1 The Department of Social and Health Services (DSHS), joined by the Court Appointed Special Advocate (CASA), appeals from the superior court's orders dismissing its petitions to terminate Peter Tsimbalyuk's parental rights to his three children.[1] Appellants argue the court erred in applying RCW 13.34.180(1)(f), the sixth element of the parental rights termination statute. We grant discretionary review of this issue because we agree that the court committed obvious error in applying RCW 13.34.180(1)(f). We reverse and remand for further proceedings consistent with this opinion.

FACTS
¶ 2 This case concerns three children: P.P.T., J.J.I., and O.L.T. Mr. Tsimbalyuk is the father of all three children. Veronica Haupt is the mother of P.P.T., and Toby Irby is the mother of J.J.I. and O.L.T.[2] The parental rights of the mothers were terminated and are not at issue here.[3]

1. P.P.T.
¶ 3 P.P.T. was born on September 12, 2000. Three months later, Ms. Haupt left the family, so P.P.T. was raised by Mr. Tsimbalyuk. While under his father's care, P.P.T. spent a significant amount of time with his paternal grandmother and two aunts.
¶ 4 P.P.T. was removed from his father's care and found dependent in May 2007. The removal was triggered by a domestic violence incident in November 2006, during which Mr. Tsimbalyuk struck Ms. Irby in the face, neck, back, and abdomen, causing her to black out, throw up blood, and bleed from the rectum. The assault, which occurred within the hearing of P.P.T., led to Mr. Tsimbalyuk's arrest and incarceration. Mr. Tsimbalyuk was ordered to participate in domestic violence (DV) perpetrators' treatment, submit to random urinalysis tests (UAs), take parenting classes, and obtain a psychological evaluation. He provided the UAs, completed an approved parenting course, and submitted to a psychological evaluation by Dr. Richard Borton. Following Dr. Borton's recommendation, Mr. Tsimbalyuk participated in counseling. He also enrolled in two DV programs. But Mr. Tsimbalyuk never completed the counseling sessions or DV programs.
¶ 5 After the assault, P.P.T. was placed with his paternal aunts and then with his paternal grandmother. At the time of the *820 termination trial in February 2009, P.P.T. was eight years old and had lived with his grandmother for the past two years. According to the CASA, P.P.T. was extremely bonded to his grandmother and looked to her as his primary care giver. The CASA and DSHS social worker also testified that the grandmother wanted to adopt him.

2. J.J.I.
¶ 6 J.J.I. was born on February 21, 2005. At the time of J.J.I.'s birth, Ms. Irby was under observation by Child Protective Services (CPS) because she had displayed erratic behavior at the hospital. CPS was also aware that Ms. Irby had a long history of substance abuse and had been involved with the Department of Child and Family Welfare Services regarding three older children from other relationships. In 1994, Ms. Irby's parental rights to one child were terminated, and in 2003, the two other children were removed from her care.
¶ 7 J.J.I. was removed from his parents' care in March 2005 and found dependent in May 2005. Ms. Irby was ordered to continue substance abuse treatment, to submit to random UAs twice a week, and to engage in counseling and a psychological evaluation. Mr. Tsimbalyuk was ordered to submit to UAs twice a week and undergo a drug/alcohol evaluation.
¶ 8 In March 2006, J.J.I. was returned to his parents' care. Following the domestic violence incident in November 2006, J.J.I. remained with Ms. Irby. When she was charged with driving while intoxicated and tested positive for cocaine use, the court ordered removal, and J.J.I. was placed in foster care. At the time of the termination trial, J.J.I. was four years old and had resided out of parental care for three years. The CASA testified that J.J.I. lived with a paternal aunt, who wanted to adopt him and was initially reluctant to take J.J.I. until the termination process was complete.

3. O.L.T.
¶ 9 O.L.T was born on August 17, 2006. He lived with both parents until the November 2006 assault of Ms. Irby. O.L.T. stayed with Ms. Irby, but was removed from her care at the same time as J.J.I. Eventually, O.L.T. was placed with the paternal aunt caring for J.J.I. In May 2007, O.L.T. was found dependent. At the time of the termination trial, O.L.T. had resided all but five of 31 months of his life out of parental care. The CASA testified that the aunt wanted to adopt O.L.T. and, as with J.J.I., had been initially hesitant to take O.L.T. before the termination process was complete.

4. Termination Proceedings
¶ 10 In August 2008, DSHS filed petitions to terminate Mr. Tsimbalyuk's parental rights to P.P.T, J.J.I., and O.L.T. Mr. Tsimbalyuk opposed termination of his rights to all three children and asked the court to return the children to him. He testified that he planned to take care of the children with Ms. Irby, whom he had married in September 2008. He also stated that he would separate from Ms. Irby if that was required to have the children returned to him.
¶ 11 To obtain orders terminating Mr. Tsimbalyuk's parental rights, DSHS was required to prove the six elements of the parental rights termination statute, RCW 13.34.180(1). The superior court held that DSHS had proved the first five elements. Notably, the court found that, in spite of the services offered to help Mr. Tsimbalyuk address his parental deficiencies, his problems with domestic violence remained uncorrected and would not be corrected in the near future. The court further stated that it did not believe that Mr. Tsimbalyuk would separate from Ms. Irby and that there was little likelihood that conditions could be remedied so that the children could be returned to him in the near future. The court also entered findings that all three children were in need of a permanent home given the instability they faced in their parents' home and the length of time they had spent out of parental care, that all three children had prospects for adoption, and that the aunt and grandmother preferred to live without oversight by DSHS and the court.
¶ 12 But the court refused to order termination of Mr. Tsimbalyuk's parental rights, holding that DSHS had failed to prove the *821 sixth element, RCW 13.34.180(1)(f), whether continuation of Mr. Tsimbalyuk's relationship with the children diminished their prospects for integration into a permanent home. The court noted Dr. Borton's recommendation that Mr. Tsimbalyuk continue to have an ancillary role in the children's lives and the lack of any recommendation for termination of parental rights in his report. The court found that it was "only speculation" whether the paternal relatives would permit Mr. Tsimbalyuk to visit the children following adoption. The court opined that ongoing dependency and ongoing relative care was "sufficiently stable and permanent without adoption" and that it was not convinced that the paternal relatives would end their relationship with the children if they could not adopt. Acknowledging that there were no guardianship petitions before it, the court stated that either a dependency guardianship or long-term relative care would be in the best interests of the children because it would allow Mr. Tsimbalyuk to see them. The court encouraged the parties to file dependency guardianship petitions.
¶ 13 When the parties appeared before the court for entry of written findings, the CASA asked the court to delay entry so the family could meet and discuss the court's ruling. The court denied the request and dismissed the termination petitions.
¶ 14 DSHS moved to vacate the superior court's judgment. It also filed notices of discretionary review as to each child of the court's orders dismissing the termination petitions. The CASA joined DSHS in seeking review of these orders.
¶ 15 When the court denied the motions to vacate, DSHS filed notices of appeal as to each child of the court's orders denying a show cause hearing on the motions to vacate and the court's orders denying the motions to vacate. The CASA joined DSHS in appealing these orders.
¶ 16 DSHS filed a motion to consolidate all of the proceedings. Stating that "[i]t appears that the rulings by the trial court are appealable as a matter of right under RAP 2.2(a)," a commissioner of this court ordered consolidation.

ANALYSIS
¶ 17 DSHS and the CASA argue the superior court applied RCW 13.34.180(1)(f) incorrectly. In response, Mr. Tsimbalyuk contends that DSHS is not entitled to appeal from the orders dismissing the termination petitions as a matter of right under RAP 2.2(a) and this court's decision in In re Dependency of A.G.[4] Mr. Tsimbalyuk further contends that no basis exists to grant discretionary review under RAP 2.3. While the dismissal of the termination petitions is not appealable as a matter of right by DSHS, discretionary review is warranted because we agree that the court committed obvious error in applying RCW 13.34.180(1)(f).
¶ 8 RAP 2.2(a) lists the superior court decisions from which a party may appeal as a matter of right. It states, in relevant part,
(a) Generally. Unless otherwise prohibited by statute or court rule and except as provided in sections (b) and (c), a party may appeal from only the following superior court decisions:
(1) Final Judgment. The final judgment entered in any action or proceeding, regardless of whether the judgment reserves for future determination an award of attorney fees or costs.
. . . .
(3) Decision Determining Action. Any written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action.
. . . .
(5) Juvenile Court Disposition. The disposition decision following a finding of dependency by a juvenile court, or a disposition decision following a finding of guilt in a juvenile offense proceeding.
(6) Termination of All Parental Rights. A decision terminating all of a person's parental rights with respect to a child.
. . . .

*822 (13) Final Order After Judgment. Any final order made after judgment that affects a substantial right.
¶ 19 In A.G., the State sought to appeal the dismissal of its petition for termination of the mother's parental rights. In rejecting the State's argument that the dismissal was appealable as a matter of right under subsections (5) and (6) of RAP 2.2(a), the A.G. court drew upon this court's decision in In re Welfare of Watson.[5]
The Watson decision holds that the State has no right of appeal from the . . . dismissal of a petition for the permanent deprivation of parental rights. Watson indicates that subsections (5) and (6) of RAP 2.2(a) explicitly recognize the stages of juvenile proceedings where an appeal as a matter of right will lie and that a reading of the rule makes it clear that the State is not entitled to an appeal from the dismissal of a petition for permanent deprivation.[[6]]
The A.G. court also rejected the State's argument that the dismissal of its petition was independently appealable as a final judgment under subsections (1), (3), and (13) of RAP 2.2(a). The court pointed out that the dismissal did not end the overall action since the underlying dependency remained in place and the State could file an additional termination petition.[7] The court also looked to the practical effect of the dismissal order, stating that the order only temporarily discontinued or postponed termination proceedings.[8]
¶ 20 Accordingly, DSHS may not appeal the dismissal of the termination petitions under RAP 2.2(a)(5) or (6). Nor may DSHS appeal the dismissal under RAP 2.2(a)(1), (3), or (13) because the court's orders are not final. As in A.G., dismissal of DSHS's petitions did not end the overall actions because the underlying dependencies remain in place and the State may file additional termination petitions. Furthermore, the practical effect of the orders is the postponement of termination proceedings.
¶ 21 But, as noted in A.G. and Watson, we may treat the appeal as a motion for discretionary review and grant discretionary review under RAP 2.3.[9] This rule sets forth the acts of a superior court that are not appealable as a matter of right but may be considered on a motion for discretionary review. Subsection (b) provides that discretionary review may be accepted only in certain circumstances, such as when (1) the superior court committed obvious error rendering further proceedings useless, (2) it committed probable error and the decision alters the status quo or limits the freedom of a party to act, or (3) it has so far departed from the accepted and usual course of judicial proceedings as to call for review by the appellate court.
¶ 22 Here, appellants contend that the superior court committed obvious error when it applied RCW 13.34.180(1)(f). This is an error of law reviewed de novo.[10]
¶ 23 Two statutory provisions describe the standards for terminating the parent-child relationship. RCW 13.34.180(1) sets forth six statutory elements that the State must prove by clear, cogent, and convincing evidence. If these elements are established, RCW 13.34.190 then requires that the State prove by a preponderance of the evidence that termination of the parent-child relationship is in the child's best interests.
¶ 24 This case turns on the application of the sixth element of RCW 13.34.180(1), subsection (f). The six statutory elements are:

*823 (a) That the child has been found to be a dependent child;
(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future . . .; and
(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.
¶ 25 In applying RCW 13.34.180(1)(f), our Supreme Court has held that "the main focus. . . is the parent-child relationship and whether it impedes the child's prospects for integration, not what constitutes a stable and permanent home."[11] This court has further clarified that "[w]hile a detrimental personal relationship would not be irrelevant, this factor is mainly concerned with the continued effect of the legal relationship between parent and child, as an obstacle to adoption; it is especially a concern where children have potential adoption resources."[12] In addition, our Supreme Court has declared that a finding under RCW 13.34.180(1)(f) "necessarily follows from an adequate showing" that there is little likelihood that conditions will be remedied so that children can be returned to the parent in the near future, which is the fifth statutory element, RCW 13.34.180(1)(e).[13]
¶ 26 In light of this precedent, the superior court erred in two respects. First, it mistakenly focused on what it believed constituted a stable and permanent home for P.P.T., J.J.I., and O.L.T., rather than on the continued effect of Mr. Tsimbalyuk's legal relationship with the children on their prospects for adoption. Specifically, the court found that the children were in need of a permanent home given the instability of residential care and the length of time spent in out-of-home care, that there were prospects for adoption for all three children with paternal relatives, and that the families preferred to live without oversight by DSHS and the court. Although these findings established that Mr. Tsimbalyuk's legal relationship posed an obstacle to the children's adoption prospects, the court then directed its attention to what it believed constituted a desirable permanent home for the children. It reasoned that either a dependency guardianship or long-term relative care would be in the best interests of the children because it would allow Mr. Tsimbalyuk to see them. The court further stated that it was not convinced that the paternal relatives would end their relationship with the children if they could not adopt. Thus, it held that "RCW 13.34.180(1)(f) has not been established by clear, cogent, and convincing evidence because the Department has not proved by clear, cogent, and convincing evidence that the current homes are not stable and permanent short of termination and adoption." These findings and conclusions show that the superior court was aware that Mr. Tsimbalyuk's legal relationship with the children posed an obstacle to their adoption prospects but improperly focused on what it believed constituted an appropriate permanent home for the children.
¶ 27 Second, the superior court erred by failing to find that the State had proved RCW 13.34.180(1)(f), given its finding under the fifth statutory element, RCW 13.34.180(1)(e), that there was little likelihood that conditions would be remedied. Noting Mr. Tsimbalyuk's failure to complete counseling *824 and DV treatment, the court found that Mr. Tsimbalyuk's domestic violence issues had not been corrected and would not be corrected in the near future. The court also found there was little likelihood that conditions would be remedied so that the children could be returned to Mr. Tsimbalyuk because it did not believe that Mr. Tsimbalyuk would separate from Ms. Irby. Given these findings, there was more than adequate evidence supporting its finding under RCW 13.34.180(1)(e). Therefore, a finding under RCW 13.34.180(1)(f) necessarily followed.
¶ 28 Mr. Tsimbalyuk suggests that this result "read[s] both RCW 13.34.180(1)(f) and RCW 13.34.190 out of existence." He insists that "[i]n addition to proving subsections (a)  (e) [of RCW 13.34.180(1)], the State must also prove RCW 13.34.180(1)(f) by clear, cogent and convincing evidence, and must prove that termination serves the children's best interests. RCW 13.34.190." This argument ignores Supreme Court precedent establishing that a finding under RCW 13.34.180(1)(f) necessarily follows from an adequate showing under RCW 13.34.180(1)(e). Mr. Tsimbalyuk, however, is correct in stating that after determining that the six statutory elements under RCW 13.34.180(1) have been satisfied, the court must consider whether appellants have proved that termination is in the children's best interests under RCW 13.34.190. We remand to the superior court to make this determination.

CONCLUSION
¶ 29 The superior court committed obvious error in applying RCW 13.34.180(1)(f). It failed to focus on the effect of the legal relationship between Mr. Tsimbalyuk and the children on the children's adoption prospects and failed to enter a finding under RCW 13.34.180(1)(f) consistent with its finding under RCW 13.34.180(1)(e). We therefore grant discretionary review and reverse and remand for further proceedings consistent with this opinion.
WE CONCUR: APPELWICK and COX, JJ.
NOTES
[1] Because resolution of this issue is dispositive, we need not address appellants' assignments of error regarding the court's orders denying a show cause hearing on the motions to vacate, the court's orders denying the motions to vacate, and the sufficiency of the evidence.
[2] Ms. Irby married Mr. Tsimbalyuk in September 2008, but we refer to her as Ms. Irby for clarity.
[3] Ms. Haupt's parental rights were terminated in November 2008. Ms. Irby relinquished her parental rights, and her parental rights were terminated in February 2009.
[4] 127 Wash.App. 801, 112 P.3d 588 (2005).
[5] 23 Wash.App. 21, 594 P.2d 947 (1979).
[6] A.G., 127 Wash.App. at 806, 112 P.3d 588.
[7] A.G., 127 Wash.App. at 807, 112 P.3d 588.
[8] A.G., 127 Wash.App. at 807, 112 P.3d 588.
[9] In granting discretionary review of this issue, we consider the briefs submitted by the CASA but do not address whether it is entitled to appeal from the dismissal of the termination petitions as a matter of right.
[10] Spokane County ex rel. County Commissioners v. State, 136 Wash.2d 644, 649, 966 P.2d 305 (1998) ("An error of law is `an error in applying the law to the facts as pleaded and established.'" (internal quotation marks omitted) (quoting Westerman v. Cary, 125 Wash.2d 277, 302, 892 P.2d 1067 (1994))); see also City of Seattle v. May, 151 Wash.App. 694, 697, 213 P.3d 945 (2009).
[11] In re Dependency of K.S.C., 137 Wash.2d 918, 927, 976 P.2d 113 (1999).
[12] In re Dependency of A.C., 123 Wash.App. 244, 250, 98 P.3d 89 (2004).
[13] In re Dependency of J.C., 130 Wash.2d 418, 427, 924 P.2d 21 (1996).